UNITED STATES of America, Plaintiff,

v.

AMERICAN TELEPHONE AND TELE-
GRAPH COMPANY; Western Electric
Company, Inc.; and Bell Telephone Lab-
oratories, Inc., Defendants.

Civ. A. No. 74–1698.

United States District Court,
District of Columbia.

Aug. 20, 1981.

Gerald A. Connell, U. S. Dept. of Justice, Antitrust Div., Washington, D. C., for plaintiff.

Jim G. Kilpatric, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, George L. Saunders, Jr., Sidley & Austin, Washington, D. C., for defendants.

HAROLD H. GREENE, District Judge.

## MEMORANDUM

On August 13, 1981, the Court held a hearing to determine whether D–1–141, a Department of Defense document, is an admission of a party-opponent within the meaning of Rule 801(d)(2) of the Federal Rules of Evidence; if it is, what weight it should be accorded in view of the circumstances surrounding its creation and its presentation to the Court; and whether the Court's previous ruling—that the plaintiff comprises all departments and agencies of the United States for purposes of this action—should be modified.

 It is convenient to discuss the issues and the evidence adduced at the hearing under two headings—first, whether AT&T was the author or a co-author of the document[1] (and what would be the evidentiary consequence of any such authorship);

and second, whether any improprieties occurred in either the preparation of the document or the circumstances under which it was turned over to AT&T for use in evidence here.

## I

D–1–141 analyzes the anticipated consequences of a divestiture of the Bell System from the point of view of the Defense Department's national defense and security responsibilities, and it states that the separation of local exchange from intercity telecommunications functions would cause substantial harm in that regard. Central to that conclusion is the finding that Defense's telecommunications needs require the continued operation of the Bell System as "a regulated ... monopoly" with nationwide network planning, design, operations, and management functions. The study goes on to state that the Department of Justice's divestiture "scenarios" are based upon a substantial lack of understanding of the "telecommunications network, the extent of that network, how it is planned, operated and maintained, and most importantly, how it responds to the Nation's needs in time of disaster or emergency," and it concludes that continuation of attempts to restructure the telecommunications industry would serve "neither the Nation's defense or security and emergency preparedness interests nor the economic interest of any user of Bell System communications service."[2]

It is clear that AT&T personnel did not draft the study. It is equally clear, how-

---

1. Defendants argue that the Defense Department document was prepared for the consideration of the President and that therefore any inquiry by the Court into AT&T's possible participation in that preparation constitutes an invasion of the President's prerogatives under Article II of the Constitution. This contention wholly lacks merit, for at least three independent reasons: (1) if such an Executive privilege exists, defendants, which are private parties, lack standing to assert it; (2) the document was originally prepared not for the President but for the consideration of Assistant Attorney General Baxter with regard to this very litigation; and (3) in any event, there is no support in statute or precedent for the proposition that, when a document is sought to be introduced

into evidence in court, the court is precluded from considering the circumstances of its preparation merely because the exhibit may have initially been intended for the President or the Congress. The courts have an obligation to determine the admissibility and the appropriate weight of evidence offered in litigation before them (just as other branches of government determine similar issues when papers are presented to them).

2. It is not apparent on what basis the Department of Defense speaks to the economic interests of telecommunications users apart from national defense and security considerations.

ever, that they were afforded the opportunity for substantial input: at the request of the Defense Department, they made suggestions and proposed ideas in the course of at least three separate meetings, and they provided the Defense Department with a "box full of . . . materials." [3] By and large these contributions related to technical details concerning the management of the telecommunications network, but AT&T employees were also asked to provide, and they did provide, opinions concerning the effect of various divestiture scenarios, that is, on the likely consequences if, at the conclusion of this lawsuit, the Court ordered some breakup of the Bell System. Portions of the completed Defense Department study bear a strong resemblance to the ideas contributed by AT&T, and when Bell System employees were given an opportunity to review the document,[4] they pronounced themselves well satisfied.

A major part of the evidence at the August 13 hearing was devoted to the question whether the resemblance between the opinions of AT&T and those reflected in the Department of Defense document is indicative of a mere coincidental parallelism in views or whether the Department, in fact, simply adopted Bell System positions.[5]

The evidence indicates that the Department of Defense relied almost entirely for the technical portions of its study upon AT&T. Without those technical details the document is not much more than a series of conclusory opinions which happen to be at odds with those advanced in this Court by the Department of Justice and its witnesses. Moreover, no one at the Defense Communications Agency seems to have had the necessary technical skills to verify the accuracy of the data,[6] and no one at higher levels in the Department made any substantial effort at such verification.[7] The document was simply forwarded to the Secretary of Defense and then to the President— and similarly it was submitted to the Court for introduction into evidence—on the basis of the data supplied by AT&T.

If these were the sole facts concerning the production of the study, the Court would have little hesitancy in rejecting it as an "admission" of the government. A document can hardly be deemed to be an admission of a party when it is, in effect, produced by the opposing party. However, as indicated above, the technical portions constitute only one part of the study. The bulk of the document is devoted to Defense Department opinions to the effect that the

---

3. Defense Department personnel also met with representatives of the United States Independent Telephone Association, a group of independent telephone companies who submitted some printed brochures. Subsequently, several other private firms, at their request, were given an opportunity to meet with Defense officials.

4. No private entity other than AT&T was afforded such an opportunity.

5. On that issue, defendants argue on the one hand, in discussing admissibility and in attempting to escape the inference of authorship, that their contribution to the substance of the document was minimal and that the document is "old hat," merely reiterating views already held by the Defense Department; yet on the other they assert that the document is a significant substantive study of the impact of divestiture on the telecommunications network and that the factual material therein should be given substantial weight. The Defense Department witnesses also gave contradictory testimony on this issue. John T. Whealan, General Counsel of the Defense Communications Agency, stated that "we had no information on the

Bell System network planning"; that he is a lawyer, who lacks the technical background to evaluate critically the technical portions of the AT&T study; and that the analysis done with the assistance of AT&T represents the first time that any federal agency has ever become knowledgeable about the network. On the other hand, J. Randolph MacPherson, Whealan's assistant, expressed the view that the AT&T briefings "contributed very little to [his] understanding of the impact of divestiture" on national security, and that he relied only to a very minor extent on the information AT&T provided.

6. Only one individual, Mr. MacPherson, even claimed to possess the requisite expertise, but he, too, is a lawyer, not an engineer.

7. While the authors of the report at DCA had meetings with Defense Department officials involved with security and communications, these officials did not conduct any substantial investigation of their own to determine whether the AT&T contribution was correct.

divestiture of the Bell System would be harmful to national security. It is conceded by all that the Department has held that view for a long time, apparently at least since 1956, when an antitrust action against AT&T was concluded by a consent decree at least partly on the basis of Defense considerations similar to those contained in the present study.

In short, it seems clear that the Department of Defense would have expressed these same views at this time, with or without the supporting material provided by AT&T. For that reason, and absent any taint by misconduct (see Part II *infra*), those views should not be kept out of the record herein. Throughout these proceedings, which are being conducted without a jury, the Court has resolved evidentiary doubts in favor of admissibility, on the theory that the facts which may assist in a just resolution of this important case should not be kept out unless this is clearly warranted. The document will accordingly be admitted into evidence.

The persuasiveness of a given piece of documentary evidence depends, of course, upon the soundness of its origins. As indicated, the technical support for the Defense Department study was basically supplied by the defendants in this action. This does not mean, of course, that either that technical information or the conclusions which others drew therefrom are necessarily incorrect; but it does mean that the document—because of the obvious AT&T self-interest which was insinuated into its preparation— is entitled to less weight than would be a wholly independent, authoritative Defense Department study.

## II

Defendants have requested [8] that the Court make a finding that neither they nor the Department of Defense nor either party's employees [9] have been guilty of misconduct either with respect to the preparation of the document or in connection with its provision by Defense to AT&T.

No culpability can be attached in that regard to AT&T or its personnel. The company received a request for assistance in the preparation of a Defense Department study on a technical subject with which AT&T's employees were intimately familiar and, quite properly, they complied. [10] Similarly, no blame can be attached to AT&T's effort to impart to Defense its views on the consequences of divestiture or to its use in court of a study so obviously favorable to its own case. [11]

8. Defendants also contend that the Court should have permitted them during the hearing on August 13 to inquire into the question whether high government officials outside the Defense Department, possibly including the President, may have somehow ratified the document and adopted it as their own. But the August 13 hearing was concerned solely with the question whether admissibility and weight were affected by *defendants'* role in its preparation and presentation to the Court. The question whether other officials may have views similar to or identical to those expressed in the memorandum was not a subject of the hearing. In the course of the trial itself, the defendants are, of course, free to offer into evidence as admissions the opinions of or facts known to other government officials, and such admissions will be received provided they meet the usual evidentiary tests.

9. It is again not clear on what basis counsel for defendants claim to have standing to represent the Department of Defense or its personnel in this regard, and their request may be a further manifestation of the confusion of roles dis-

cussed in the text *infra*. Nevertheless, because the conduct of such personnel bears upon the evidentiary questions raised with respect to the document, the conduct of the Defense Department employees is considered herein.

10. Their cooperation with the Defense Department is not subject to criticism regardless whether it represented an effort to assist the defense effort of the United States, an attempt to propagate Bell System views, or both.

11. However, AT&T may properly be faulted for continuing to argue and to intimate in various ways that counsel for plaintiff are not faithfully expressing the views and interests of their client the United States, and that several high government officials do not or may not agree with counsel on how the lawsuit should be handled, whether it should be dismissed, and what relief should be sought. As in all litigation, it is counsel who represents the client, and it is not the business of the opposing attorneys to presume to speak for that client. The Court expects defendants' practice to cease.

The Defense Department employees involved in this matter cannot be exculpated so easily. The General Counsel of the Defense Communications Agency and some of his subordinates engaged in the following course of conduct. First, upon being requested to prepare a study which was to deal, at least in part, with issues in this lawsuit, they promptly called upon the Bell System, the government's opponent in that lawsuit, for assistance. The only other private entity so contacted was the United States Independent Telephone Association, which appears to be largely allied with AT&T on the divestiture issues. No private telecommunications company holding the view that divestiture would be beneficial to the Nation was called upon. Second, after the study was finished in draft, the Bell System was the only entity to be given an opportunity to comment upon it and to submit revisions. Third, when the study was completed, all but one of the forty-four copies were distributed to various government agencies, the sole non-government recipient being, once again, the Bell System.[12] William H. Taft, IV, General Counsel of the Department of Defense, when called as a witness in this Court, was unable to defend this practice, and he testified that he "didn't think it should have been done." Fourth, as noted above, the technical aspects of the study incorporated Bell System's input without any significant review; yet that fact was apparently not drawn to the attention of the recipients of the document. Fifth, when AT&T's counsel requested permission to use the study for introduction into evidence in this litigation, that permission was promptly granted,[13] although the General Counsel of the DCA well knew that the government was being represented in this lawsuit by attorneys from the Department of Justice.[14]

■ Without making a determination whether any one of these acts, standing alone, would have been improper, it is difficult to escape the conclusion that in the aggregate they amount to direct cooperation with a defendant in a lawsuit in which the government is the plaintiff, on the very subject of that lawsuit, and that on this basis they are not within the bounds of propriety.[15] If such activities were duplicated in government on a large scale, they would call into serious question the Court's earlier ruling that for evidentiary purposes the plaintiff in this lawsuit is the entire government of the United States, not merely the Department of Justice.[16] But the Court believes the conduct revealed by the evidence here to constitute an aberration, and for that reason it will, at this time, let the previous ruling stand.

12. Oddly enough, the Department of Justice did not receive a copy until about one week later. At some subsequent time, copies were made available to additional governmental and non-governmental entities.

13. The General Counsel claimed that he stated only that *his agency* had no objection to the use of the document in evidence. This assertion is belied by the fact that defendants' attorneys believed that, with Mr. Whealan's permission, they had adequate authority for use of the document in court without further consent from the plaintiff's attorneys. It is also belied by the testimony of Robert Gradle, AT&T's contact with the General Counsel, who testified that defendants wanted to use the document in evidence on August 3, that day, as part of the testimony of Dr. Ian Ross, and that Whealan had said that "it was all right" so to use it.

14. See 28 U.S.C. § 516, and see Rule 5–104 of the Code of Professional Responsibility. Justice Department attorneys actually conducting the litigation are, of course, the only ones appropriately prepared to deal with evidentiary questions in the context of the trial, including possible claims of governmental or other privilege. Again, Mr. Taft testified that he believed the correct way would have been to channel all communications with AT&T attorneys through the Department of Justice.

15. Although government officials and agencies are, of course, free to hold and to express opinions on substantive issues whether or not these opinions agree with those advocated by the Department of Justice in litigation, they may legitimately be expected not to give direct assistance to the government's opponents in an action (civil or criminal) brought to enforce the laws of the United States.

16. It would hardly be fair to hold the plaintiff herein to statements made by officials outside the Department of Justice on the theory that all of them are on the "same side" when it turns out that, in fact, this is not so.